UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In Re: | ) | Case No. 14-11886 (CLB) |
| | ) | |
| NATIONAL RISK ASSESSMENT, INC., | ) | Chapter 7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| DANIEL E. BRICK, ESQ., as Chapter 7 | ) | |
| Trustee for National Risk Assessment, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-932 |
| | ) | |
| JOSEPH T. RING, JOHN H. RING, III, | ) | |
| JOHN RING, JR., NORA RING and | ) | |
| GRANITE TOWER CAPITAL, | ) | A.P. No. 16-01046 (CLB) |
| | ) | |
| Defendants. | ) | |

## ORDER REGARDING MOTION TO WITHDRAW REFERENCE
### (Doc. 1)

Defendants Joseph T. Ring, John Ring, Jr. and Nora Ring, have filed a motion to

withdraw the reference of an adversary proceeding now pending in this involuntary Chapter 7

bankruptcy.

## FACTS

The facts relevant to the motion are not in dispute. The Chapter 7 debtor National Risk

Assessment, Inc. ("NRA") is a New York corporation formed in June 2004 for the purpose of

facilitating medical examinations for insurance companies. Defendant Joseph Ring served as

president. Defendants John Ring, Jr. and Nora Ring are his parents. NRA operated from 2006

until 2014 when its creditors commenced this bankruptcy case.

The Chapter 7 trustee has commenced an adversary proceeding against the three moving

parties as well as John H. Ring, III (Joseph's brother) and Granite Tower Capital which provided

financial advice to the debtor. The trustee alleges that by December 2008, NRA was insolvent. The trustee claims that despite the poor financial condition of the company, Joseph Ring used NRA to pay personal expenses in excess of $1,000,000 in addition to a substantial salary which reached $250,000 in 2010.

The adversary proceeding includes five causes of action.

The First Cause of Action alleges fraudulent transfers pursuant to 11 U.S.C. § § 544, 548 and New York Debtor & Creditor Law § § 272 et seq. The trustee seeks to avoid transfers by NRA within two years of the filing of the petition under federal bankruptcy law and within six years under New York law. The trustee alleges that these transfers were made without exchange of reasonable equivalent value at a time when NRA was insolvent or otherwise financially impaired.

The Second Cause of Action is against Granite Tower Capital, which has defaulted.

The Third Cause of Action is against Joseph Ring for breach of fiduciary duty. The trustee alleges that Joseph Ring made exorbitant payments from NRA to himself and others in violation of his fiduciary duty to the company.

The Fourth Cause of Action repeats the same allegations against John Ring, who is Joseph Ring's brother. John Ring has not joined in the pending motion.

The Fifth Cause of Action seeks equitable subordination of any claim to the debtor's assets by the defendants.

The adversary proceeding has been pending in the Bankruptcy Court for the Western District of New York since 2016. Discovery has closed. The trustee intends to file for summary judgment on some or all of the causes of action.

Joseph Ring and his parents have filed a demand for jury trial. They do not consent to a jury trial before the bankruptcy judge.

## ANALYSIS

In ruling on a motion to withdraw the reference to the bankruptcy court, the district court considers "a number of factors in evaluating cause [for withdrawal]: whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

The first issue is whether the claims are core or non-core. The distinction arises from the passage of 28 U.S.C. § 157 in 1984. In response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (holding that the Bankruptcy Act of 1978 violated Article III by authorizing bankruptcy judges to decide cases arising under state and constitutional law), Congress enacted 28 U.S.C. § 157. The statute distinguishes between core proceedings "arising under Title 11, or arising in a case under title 11" and non-core proceedings. 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2) sets forth a non-exhaustive list of core proceedings, including "proceedings to determine, avoid, or recover fraudulent conveyances." In contrast, non-core proceedings are matters that are "otherwise related to a case under Title 11." 28 U.S.C. § 157(b)(3). Non-core proceedings concern claims that would not be resolved through the usual claims determination process in the bankruptcy case. They include state law causes of action against persons who are not otherwise parties in the bankruptcy case.

In this case, the parties agree that the fraudulent transfer and equitable subordination claims are core proceedings. Defs.' Mem. at 5–6 (Doc. 1). These claims are specifically identified as core proceedings at 28 U.S.C. § 157(b)(2)(H) (fraudulent conveyances) and (K)

(priority of liens). They also agree that the breach of fiduciary duty claims are non-core proceedings. Pl.'s Mem. at 10 (". . . the non-core claim (the claim of breach of fiduciary duty against Defendant Joseph Ring), is intertwined with the core claims."). These are tort claims arising under New York state law.

The court agrees with the parties that the complaint in the adversary proceeding contains core and non-core claims. The fraudulent transfer and equitable subordination claims clearly arise within the context of the bankruptcy case itself. They exist as a result of the filing of the bankruptcy and are governed by the bankruptcy code. And they are specifically identified by section 157(b)(2) as core claims.

The breach of fiduciary duty claims are non-core claims for money damages arising under state law. *See* Compl., ¶ 105 ("Plaintiff demands the entry of judgment against Joseph Ring for his breaches of fiduciary duties and demands judgment for damages incurred by the Debtor . . . ") (Doc. 1). These claims are "legal" in nature, not equitable, and are subject to the Seventh Amendment guarantee of jury trial. *See Pernell v. Southall Realty*, 416 U.S. 363, 370 (1974) ("[W]here an action is simply for the recovery . . . of a money judgment, the action is one at law.")

The next issue—and the issue which governs the outcome of the motion—is whether the defendants' jury demand prevents the bankruptcy court from trying the adversary proceeding. Defendants contend that both core and non-core claims which are "legal" in nature must be tried to a jury before an Article III judge. Defs.' Mem. at 9 ("The 'core' nature of the claim does not alter the entitlement to a jury when demanded on legal claims."). The trustee chides the defendants for not stipulating to a jury trial before the bankruptcy judge and questions their motives: "Defendants' motion, viewed under the specific facts of this case, is a blatant attempt

to forum shop and delay the adjudication of the claims against them." Pl.'s Mem. at 9. The

trustee opposes any withdrawal of the reference prior to an actual trial of the case. "Accordingly,

for purposes of judicial economy and efficiency, the Bankruptcy Court should be permitted to

resolve the anticipated dispositive motion before a ruling requires withdrawal of the reference."

Pl.'s Mem. at 11. The trustee stops short, however, of arguing that the non-core claims of breach

of fiduciary duty can be tried before the bankruptcy judge.

In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), the Supreme Court held that

*both* core and non-core claims for money damages against parties who had not filed claims in the

bankruptcy court were subject to the Seventh Amendment jury trial guarantee so long as the

claims were not subject to the "public rights" exception. "We hold that the Seventh Amendment

entitles [a person sued by the trustee to recover an allegedly fraudulent monetary transfer] to a

trial by jury, notwithstanding Congress' designation of fraudulent conveyance actions as 'core

proceedings' in 28 U.S.C. § 157(b)(2)(H)." *Id.* at 36. The Court identified the fraudulent

transfer claim as similar to claims brought in the English law courts prior to 1789. It identified

the relief sought as legal, not equitable, in nature. It held that the "public right" doctrine which

recognizes the authority of Congress to refer certain types of claims for decision by "legislative"

courts did not apply to the private interests at issue in a fraudulent transfer case. Based on these

factors, the Court determined that the defendant was entitled to a trial by jury even though

fraudulent transfer claims had been identified by Congress as core proceedings to be decided by

the bankruptcy judge.

The Court did not address the question of whether the jury trial could be conducted by the

bankruptcy court. In 1994, Congress added 28 U.S.C. § 157(e), which authorizes jury trials

before bankruptcy judges "if specially designated to exercise such jurisdiction by the district

5

court and with the express consent of all the parties." *See Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932 (2015) (Article III is not violated if parties consent to a jury trial before the bankruptcy judge). Because consent is absent in this case, the bankruptcy court lacks statutory authority under section 157 to conduct a jury trial.

The Court returned to the constitutional issue in *Stern v. Marshall,* 564 U.S. 462 (2011), in which it held that a counterclaim for tortious interference filed by the debtor against a claimant could not be tried in bankruptcy court. As in *Granfinanciera,* the Court ruled against what it perceived as an unconstitutional encroachment on the Seventh Amendment by the resolution of core or non-core claims (not excepted out by the public right doctrine) by a bankruptcy judge in the absence of consent of the parties. The Court held that "[w]hen a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Id.* at 484 (citation omitted).

As this discussion indicates, the court concludes that both the core fraudulent transfer claims and the non-core breach of fiduciary claims are subject to the guarantee of jury trial.[1] In the absence of consent of the parties, that jury trial must be conducted before an Article III judge. As a matter of constitutional principle, the reference to the bankruptcy court must be withdrawn prior to a trial.

---

[1] The parties have not addressed the appropriate forum for resolution of the equitable subordination claims. It does not appear that the defendants have filed claims against the estate or that the trustee is actively pursuing an equitable subordination claim. In light of the denial of the motion to withdraw the reference at this time, there is no need to rule on the appropriate forum for the resolution of that claim. If the motion is renewed, the court anticipates that the resolution of the equitable subordination claim will be addressed directly.

The remaining question concerns *when* the reference must be withdrawn. Discovery is complete in the adversary proceeding. Summary judgment motions have not been filed. The case was stayed in October 2018 pending a ruling on this motion.

Bankruptcy Judge Carl Bucki has presided over the Chapter 7 proceeding and this adversary proceeding since 2014 and has a deep familiarity with the parties and the case. From the perspective of judicial economy as well as a just and thoughtful resolution of any dispositive motions, there would be much to lose from a hasty withdrawal of the reference.

This court exercises discretion under 28 U.S.C. § 157(d) as to the timing of withdrawal of the reference. The court will not withdraw the reference until such time as the case is ready for trial. *See* 9 *Collier on Bankruptcy* ¶ 5011.01(c) (2018) ("If it is appropriate for the reference to be withdrawn, the better course for the district court is to deny the motion and instruct the moving party to renew the motion when the matter is ready for trial. In this manner, the district court may maintain its separate appellate and trial court roles."). For this reason, the court will deny the motion to withdraw reference at this time without prejudice to the right of the defendants to renew it when the case is trial-ready.

## CONCLUSION

The motion to withdraw reference is DENIED without prejudice to the right of the defendants to renew it when the case is trial-ready.

Dated this 16th day of January, 2019.

Geoffrey W. Crawford, Judge
United States District Court